ADOLPHUS K. BORDEN *et ux. versus* THE HINGHAM MUTUAL FIRE INSURANCE COMPANY.

Where property was insured by a mutual insurance company to an amount founded on a representation made to them in regard to its value by the assured, and with the knowledge, or the means of knowledge, of the situation and actual value of the property, and the assured paid a premium and assumed liabilities as a member of the company, proportioned to the amount insured, it was *held*, that in the absence of fraud, the company was liable for the whole of such amount, although it exceeded the value of the interest of the assured.

ASSUMPSIT on a policy of insurance.

On a case stated it appeared, that the defendants, by their act of incorporation, were authorized to insure dwellinghouses or other buildings to an amount not exceeding three quarters of the value of the property insured.  The act further provides, that "in case any member shall have a just claim against the corporation, exceeding the amount of their then existing funds, the directors shall, without delay, assess such sums as may be necessary, on the members, which assessment shall be in proportion to the amount of his premium or deposit, but shall not, in any case, exceed double the amount of said premium and deposit."

On September 1st, 1834, the defendants executed a policy insuring for the plaintiffs the sum of $ 1250, on their dwellinghouse in North Bridgewater, and the sum of $ 250, on a barn and shed adjoining thereto, during the term of seven years. The policy stated that the sums so insured were not more than three fourths of the value of the property. The plaintiffs paid the sum of $ 17·25, as a premium, and gave their note to the defendants for the sum of $ 69, as deposit money.

In the representation made to the defendants by the plaintiffs, in writing, at the time of the execution of the policy, the house was valued at the sum of $ 1700, and the barn and shed, at the sum of $ 350. It was also set forth in such representation, that the buildings were mortgaged by Daniel Huntington to the first parish in North Bridgewater, in January, 1831, to secure the payment of the sum of $ 1650.

On August 1st, 1834, Huntington quitclaimed all his right and title in and to the premises, to the female plaintiff. On May 26th, 1834, the mortgagees, by their treasurer, entered on the premises for the purpose of foreclosing the mortgage. On March 6th, 1836, the buildings insured were destroyed by fire. The buildings were worth the sum of $ 2000, before their destruction, and the land upon which they stood was of the value of $ 1000. The materials, &c. not consumed and remaining on the land, were worth the sum of $ 200. At the time of the destruction of the buildings, the principal of the note given by Huntington to the parish, and secured by the mortgage, was unpaid ; and a portion of the interest thereon was due from January 21st, 1835. No agreement was ever made on the part of the plaintiffs, to pay the amount due on the note and mortgage.

Benjamin Kingman was the agent of the defendants in North Bridgewater, and the policy in question was effected through his agency. He was also treasurer of the parish, and the mortgage and note were both made payable to him as such treasurer, and remained in his care.

The Court were to determine the amount, if any, to be paid by the defendants to the plaintiffs, and to enter a nonsuit or default, as the case might require.

*Oct.* 25th.    *Beal,* for the plaintiffs, cited *Strong* v. *Manufacturers Ins.*

*Co.* 10 Pick. 44 ; *Wolcott* v. *Eagle Ins. Co.* 4 Pick. 429 ;
*Miner* v. *Tagert*, 3 Binney, 205.

*Eddy* and *Lincoln*, for the defendants, cited 3 Kent's
Comm. (3d ed.) 371 ; Marshall on Insurance, 529, 549, 554,
684, 685 ; *Eager* v. *Atlas Ins. Co.* 14 Pick. 141 ; *Wolcott* v.
*Eagle Ins. Co.* 4 Pick. 429 ; *Parks* v. *General Int. Ins. Co.*
5 Pick. 34 ; *Haven* v. *Gray*, 12 Mass. R. 71 ; *Forbes* v. *As-
pinall*, 13 East, 323 ; *Mellen* v. *National Ins. Co.* 1 Hall,
(New York,) 452 ; *Steinback* v. *Rheinlander*, 3 Johns. Cas.
269 ; *Copeland* v. *Mercantile Ins. Co.* 6 Pick. 198 ; *Lau-
rent* v. *Chatham F. Ins. Co.* 1 Hall, (New York,) 41.

PUTNAM J. afterward drew up the opinion of the Court.
The defence is made on the ground, that the plaintiffs had not
an insurable interest to the amount of $ 1500 insured by the
policy. The dwellinghouse was valued at $ 1700 ; the barn
and shed, at $ 350 ; and the land on which they stood was
worth $ 1000 ; amounting in all, to $ 3050. There was a
mortgage for $ 1650. The value destroyed by the fire was
$ 1850. The plaintiffs represented to the defendants, that
the estate was mortgaged, as is above stated. And the plain-
tiffs purchased the right to redeem, by a deed of quitclaim from
the mortgager. They took the estate subject to the mortgage ;
and the mortgagees have entered for condition broken. If the
plaintiffs do not redeem, they will lose the land ; for they have
no recourse against the mortgager. He has made no covenant
to pay the mortgage ; but he has merely quitclaimed to the
plaintiffs his right and title to the estate. Now if the amount
of the plaintiffs' interest should be limited by deducting the
amount due on the mortgage from the estimated value of the
estate, it would be reduced to about $ 1300 ; and the value
of their insurable interest, being not more than three fourths of
the value of the property, according to that hypothesis, would
have been less than one thousand dollars. Yet with full
knowledge of the mortgage, and with full knowledge, or the
means of knowledge, of the actual value of the buildings, the
defendants undertake to insure to the amount of $ 1500, being
less than three fourths of the value of the buildings, as estimat-
ed in the policy.

This is, indeed, a contract of indemnity ; but we are to con-

Borden
*v.*
Hingham
Mut. Fire
Ins. Co.

strue it according to the true intent and meaning of the parties; and we are not at liberty to make a new contract for them. The representation of the plaintiffs was made when the contract was made. It became then of vital consequence to settle the value, because the premium, the deposit, and the liability of the plaintiffs to assessments, were then to be fixed for seven years to come. We do not know what strangers would have considered the buildings to be then worth. They might have been worth more or less, than the plaintiffs estimated them to be worth. But we do know that the plaintiffs estimated their interest in them to be worth $ 2,050, notwithstanding the mortgage ; and the defendants agreed to it. If it were not so, the plaintiffs would not get the security by the policy for which they paid, against the risk of fire ; and the defendants would get an amount of premium and deposit, and a right or claim for contribution against the plaintiffs, who became members of the company, greatly beyond what they were entitled to have.

If a great calamity by the destruction of property insured against fire had happened, and assessments had been made upon the members, we think the plaintiffs could not have been allowed to claim a deduction from their contribution, premium and deposit, on the ground of an over-valuation. The answer would have been ready and effectual. The defendants would have said, " we took your own estimate of the value ;" and the plaintiffs would have been concluded by it. And now, when the defendants come for an allowance, and claim to make the same objection, we think the plaintiffs may well answer, " you have accepted our estimate, and are bound by it as well as we are." We think that the parties did not intend, that the value of the buildings insured should thereafterwards be drawn into question. The plaintiffs made, and the defendants accepted the estimate ; and the contract was made upon that basis. No fraud, concealment or gaming, is suggested.

We are all of opinion, that the plaintiffs are entitled to recover the whole amount insured, it being less than the amount destroyed by the fire.

*Defendants defaulted.*